LEMMON, Judge
(dissenting).
I disagree with the legal conclusion of the majority that the Rieger’s claim for $1,200.00 has prescribed. There is no factual dispute that the Riegers advanced $1,200.00 at the 1947 act of sale, but in order to determine when liberative prescription commenced, the court must first determine the nature of the transaction which gave rise to the claim.
The Riegers testified that the bargain struck with Tierney in 1947 was a joint purchase of the residence, with the Riegers providing the cash necessary for the act of sale and Tierney furnishing the benefit of his “G.I. Bill”. As part of this agreement Tierney obligated himself to subsequently execute a counter letter recognizing the undivided one-half ownership of the Rie-gers. Furthermore, the Riegers obligated themselves to pay one-half of the mortgage note for the entire term of the loan, which the undisputed evidence established that they did.
The trial judge apparently found as a fact that this was the agreement reached between the parties, since he found Tier-ney to be in bad faith, and the majority has also made this finding of fact. Accepting this factual finding, I would then legally classify this agreement as a verbal' contract for the transfer of immovable property, which was unenforceable because the contract was not in writing. C.C. art. 2275.
However, Tierney could have voluntarily fulfilled the agreement at any time by transferring title as agreed, and the Rie-gers had no right to sue for recovery of the $1,200.00 until Tierney breached the contract by refusing to deliver title. In my opinion no cause of action for restitution of the $1,200.00 arose in favor of the Rie-gers until Tierney breached the contract. Of course, prescription could not begin to run until the cause of action arose.
It is on this legal and factual determination of the date of occurrence of the breach that the majority and I differ. In my opinion the crucial determination is the date on which Tierney communicated to the Riegers that he refused to fulfill his agreement to execute a counter letter.
The majority relies upon a 1954 letter to Tierney from an attorney, who was a *283 friend of the family, to establish the date of Tierney’s refusal to execute a counter letter. The letter reads as follows :
“February 22, 1954.
“Mr. Robert J. Tierney
3121 Camp Street
New Orleans, Louisiana.
Dear Robert:
In all fairness I believe it would be proper for you to execute a Counter-Letter in favor of your sister, Mrs. A. J. Rieger, to protect her one-half ownership in the property owned by you jointly-
If you agree with this, will you telephone me and arrange to come in and sign the Courter-Letter [sic] which has been prepared for you.
With best wishes, I am,
Very truly yours,
/s/ Henry M. Robinson
Henry M. Robinson
HMR :der
B/c - Mr. Rieger”
Tierney admitted receiving the letter, but stated that he did not understand the nature of the request. It is significant that Tierney did not testify that he refused to execute a counter letter upon receipt of the attorney’s communication or at any other time. On the contrary, he testified that he never discussed a counter letter with the Riegers until after the loan was paid off in 1965.
The party asserting liberative prescription as a defense to a claim has the burden of proving when prescription began to run. If prescription did not begin to run until Tierney communicated his refusal to execute a counter letter, and he testified that he did not even discuss a counter letter until 1965, I believe that he has failed to prove that prescription began to run before then. Suit was filed on March 4, 1968. I do not believe that his simple failure to answer the 1954 letter was sufficient to sustain his burden of proof, especially in view of his positive testimony.
Neither is there anything in the Riegers’ testimony which would establish an earlier commencement of prescription. Mrs. Rie-ger testified that her brother prior to the act of sale agreed to give them a counter letter, but that she did not press him for this document, being afraid of him because of his violent and brutal behavior on past occasions. After the Robinson letter in 1954 went unanswered, she consulted the homestead lawyer in 1958 to obtain his assistance in tactfully getting her brother to deliver the counter letter. A few years later, she consulted the same lawyer, who advised her that she had a “slim chance” to obtain title. The lawyer verified that this conversation was about 1966. I believe that Mrs. Rieger’s continued efforts to secure assistance in obtaining the counter letter tend to prove, rather than disprove, that she was unaware of any unequivocal refusal by her brother to fulfill his agreement.
Finally, there is nothing in the record to show that Tierney ever treated the Riegers as anything but co-owners, since they paid their proportionate share of the mortgage note, taxes and insurance, performed repairs on the premises, and paid no rent or other consideration after the mortgage loan was paid off. There was therefore no reason for the Riegers to believe that Tierney would not eventually recognize their interest.
In my opinion the agreement for a joint purchase remained in effect until Tierney affirmatively breached it. As long as Tierney had the power to choose whether to perform or to breach the agreement and took no affirmative action, I would hold that prescription did not begin to accrue in his favor.